# United States District Court
## Middle District Of Florida
## Orlando Division

**DEBRA VENEZIA,**

        **Plaintiff,**

**v.**                          **Case No:  6:17-cv-1053-Orl-40-DCI**

**COMMISSIONER OF SOCIAL SECURITY,**

        **Defendant.**

---

# REPORT AND RECOMMENDATION

Debra Venezia (Claimant) appeals the Commissioner of Social Security's final decision denying her application for disability benefits.  Doc. 1.  Claimant raises several arguments challenging the Commissioner's final decision and, based on those arguments, requests that the matter be reversed and remanded for an award of benefits or, in the alternative, for further proceedings.  Doc. 19 at 15-20, 26-34, 40-41, 44.  The Commissioner argues that the ALJ committed no legal error and that his decision is supported by substantial evidence and should be affirmed.  *Id*. at 20-25, 34-39, 41-44.  The undersigned **RECOMMENDS** that the Commissioner's final decision be **AFFIRMED**.

## I.      Procedural History

This case stems from Claimant's application for disability insurance benefits, in which she alleged a disability onset date of May 9, 2012.  R. 214-15.  Claimant's application was denied on initial review and on reconsideration.  The matter then proceeded before an ALJ.  On August 22, 2016, the ALJ held a hearing, at which Claimant and her representative appeared.  R. 43-83.  The

ALJ entered his decision on September 30, 2016, and the Appeals Council denied review on April 10, 2017.  R. 1-4, 24-34.  This appeal followed.

## II.    The ALJ's Decision

The ALJ found that Claimant suffered from the following severe impairments: lumbar disc disease; cervical disc disease; gastroesophageal reflux disease; bipolar disorder; depressive disorder; anxiety disorder; obesity; diabetes mellitus; osteoarthritis of the knee; headaches; chronic obstructive pulmonary disease; bursitis of the hip; and fibromyalgia.  R. 26.  The ALJ, however, determined that none of the foregoing impairments, individually or in combination, met or medically equaled any listed impairment.  R. 27-28.

The ALJ next found that Claimant had the residual functional capacity (RFC) to perform light work as defined in 20 C.F.R. § 404.1567(b)[1] with the following specific limitations:

> [T]he claimant can lift and carry 20 pounds occasionally and 10 pounds frequently. The claimant can sit, stand, and walk for six hours, each, with a sit or stand option that allows for a change of position at least every thirty minutes, which is a brief position change lasting no more than three minutes at a time where the claimant remains at the work station during the positional change.  The claimant can push and pull as much as she can lift and carry.  The claimant can occasionally reach overhead, bilaterally.  The claimant can occasionally climb ramps and stairs but never climb ladders and scaffolds.  She can frequently balance, stoop, and crouch, occasionally kneel, and never crawl.  The claimant should never work around unprotected heights, moving mechanical parts or have any concentrated exposure to humidity, wetness, dust, fumes or gasses.  In addition to normal breaks, the claimant would be off task up to five percent of time in an eight hour workday.

---

[1] Light work is defined as "lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds.  Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls.  To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities."  20 C.F.R. § 404.1567(b).

R. 28.  In light of this RFC, the ALJ found that Claimant was able to perform her past relevant work as a general clerk.  R. 33-34.[2]  Thus, the ALJ concluded that Claimant was not disabled between her alleged disability onset date, May 9, 2012, through the date of the decision, September 30, 2016.  R. 34.

## III.    Standard of Review

The scope of the Court's review is limited to determining whether the Commissioner applied the correct legal standards and whether the Commissioner's findings of fact are supported by substantial evidence.  *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011). The Commissioner's findings of fact are conclusive if they are supported by substantial evidence, 42 U.S.C. § 405(g), which is defined as "more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion."  *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997).  The Court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the Commissioner's decision, when determining whether the decision is supported by substantial evidence.  *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995).  The Court may not reweigh evidence or substitute its judgment for that of the Commissioner, and, even if the evidence preponderates against the Commissioner's decision, the reviewing court must affirm it if the decision is supported by substantial evidence.  *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983).

## IV.    Analysis

Claimant raises three assignments of error: 1) the ALJ erred by not finding Claimant's neuropathy, carpal tunnel syndrome (CTS), and hand pain and numbness to be severe impairments; 2) the ALJ failed to provide sufficient reasoning to support the weight he assigned to Dr. Yong

---

[2] The ALJ elected not to proceed to step five of the sequential evaluation process.  *See* R. 34.

Tsai's and nurse Ashleigh Palmisano's opinions, and he failed to weigh Drs. Stephane Lavoie's and Jeffrey Corak's opinions; and 3) the ALJ erred by finding that Claimant's testimony concerning her pain and limitations not entirely credible.  Doc. 19 at 15-20, 26-34, 40-41, 44.  The undersigned will address each assignment of error in turn.

### A.  Step 2

Claimant argues that the ALJ erred by not finding that her CTS and resulting hand pain and numbness are severe impairments and result in "significant limitations," but Claimant fails to explain what limitations are caused by the foregoing impairments.  Doc. 19 at 15-16.[3]

The Commissioner argues that the ALJ committed no error at step two because he determined that Claimant had severe impairments and continued on with the sequential evaluation process, where he considered Claimant's upper extremity impairments.  *Id*. at 20-25.  Further, the Commissioner argues that even if the ALJ erred at step two, the error is harmless, because the RFC determination accounts for the limitations caused by Claimant's upper extremity impairments, and Claimant has failed to demonstrate that those impairments caused any additional limitations that were not included in the ALJ's RFC determination.  *Id*. at 25.

At step two, the ALJ must determine whether the claimant has a medically determinable impairment that is severe or a combination of impairments that are severe.   20 C.F.R. § 404.1520(c).  "This step acts as a filter; if no severe impairment is shown the claim is denied, but the finding of any severe impairment, whether or not it qualifies as a disability and whether or not it results from a single severe impairment or a combination of impairments that together qualify as severe, is enough to satisfy the requirement of step two."  *Jamison v. Bowen*, 814 F.2d 585, 588

---

[3] In the final paragraph of Claimant's first assignment of error, Claimant begins to address this particular case but, starting near the end of the first sentence, actually addresses an unrelated social security disability case.  Doc. 19 at 20.

(11th Cir. 1987). Thus, the finding of a single severe impairment satisfies step two. *See id.* The failure to find additional severe impairments is harmless error as long as the ALJ considers all of the claimant's impairments (severe and non-severe) in combination throughout the rest of the sequential evaluation process. *See, e.g.*, *Freeman v. Comm'r, Soc. Sec. Admin.*, 593 F. App'x 911, 914-915 (11th Cir. 2014); *Tuggerson-Brown v. Comm'r of Soc. Sec.*, 572 F. App'x 949, 951-52 (11th Cir. 2014).[4]

The ALJ found that Claimant suffered from several severe impairments. R. 26. Thus, the ALJ satisfied step two. *Jamison*, 814 F.2d at 588.

The ALJ then proceeded to consider all of Claimant's impairments throughout the rest of the sequential evaluation process. R. 27-33. While the ALJ did not expressly mention Claimant's CTS and resulting hand pain and numbness at step three, the ALJ did find that Claimant "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments." R. 27. This finding sufficiently demonstrates that the ALJ considered the individual and combined effects of Claimant's impairments, including her CTS and resulting hand pain and numbness, at step three of the sequential evaluation process. *See Tuggerson-Brown*, 572 F. App'x at 951-52 (citing *Wilson v. Barnhart*, 284 F.3d 1219, 1224-25 (11th Cir. 2002)).[5]

---

[4] In the Eleventh Circuit, unpublished decisions are not binding, but are persuasive authority. *See* 11th Cir. R. 36-2.

[5] The undersigned notes that Claimant does not argue that she meets any listed impairments. *See* Doc. 19 at 15-20. Thus, Claimant has waived any argument that the ALJ erred at step three. *See Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1161 (11th Cir. 2004) (refusing to consider an argument that the claimant failed to raise before the district court).

The ALJ expressly discussed and considered Claimant's CTS and resulting hand pain and numbness at step four.  R. 29-31.  The ALJ ultimately determined that Claimant's impairments, which included her CTS and resulting hand pain and numbness, limited Claimant to light work with additional limitations that appear to account for Claimant's upper extremity impairments, including her limited ability to push and pull and her inability to climb ladders and scaffolds.  R. 28.  Thus, to the extent that the ALJ erred by not finding Claimant's CTS and resulting hand pain and numbness were severe impairments, that error is harmless since the ALJ considered all of Claimant's impairments, including her CTS and resulting hand pain and numbness, at step four of the sequential evaluation process.  *See, e.g.*, *Freeman*, 593 F. App'x at 914-915; *Tuggerson-Brown*, 572 F. App'x at 951-52.  Therefore, the undersigned **RECOMMENDS** that the Court reject Claimant's first assignment of error.

### B.  Medical Opinions

Claimant argues that the ALJ erred when weighing Dr. Tsai's and Nurse Palmisano's opinions.  Doc. 19 at 29-31.  Claimant also argues that that ALJ failed to weigh Drs. Lavoie's and Corak's opinions.  *Id*. at 31-34.  Thus, Claimant argues that the ALJ's decision is not supported by substantial evidence.  *Id*. at 34.

The Commissioner argues that the ALJ properly considered and weighed Dr. Tsai's and Nurse Palmisano's opinions.  *Id*. at 35-37.  The Commissioner next argues that Drs. Lavoie and Corak did not offer any medical opinions and, thus, there were no opinions for the ALJ to weigh.  *Id*. at 37-39.  Further, the Commissioner argues that even if Drs. Lavoie's and Corak's treatment records contained medical opinions, Claimant has failed to demonstrate that Drs. Lavoie's and Corak's treatment records contained findings or opinions that are inconsistent with the ALJ's RFC determination.  *Id*. at 39.  Therefore, the Commissioner argues that the ALJ properly considered

the medical evidence, weighed the medical opinions when necessary, and the ALJ's evaluation of that evidence is supported by substantial evidence.  *Id*.

The ALJ assesses the claimant's RFC and ability to perform past relevant work at step four of the sequential evaluation process.  *Phillips v. Barnhart*, 357 F.3d 1232, 1238 (11th Cr. 2004).  The RFC "is an assessment, based upon all of the relevant evidence, of a claimant's remaining ability to do work despite his impairments."  *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997).  The ALJ is responsible for determining the claimant's RFC.  20 C.F.R. § 404.1546(c).  In doing so, the ALJ must consider all relevant evidence, including the medical opinions of treating, examining and non-examining medical sources.  *See* 20 C.F.R. § 404.1545(a)(3); *see also Rosario v. Comm'r of Soc. Sec.*, 490 F. App'x 192, 194 (11th Cir. 2012).

The ALJ must consider a number of factors in determining how much weight to give each medical opinion, including: 1) whether the physician has examined the claimant; 2) the length, nature, and extent of the physician's relationship with the claimant; 3) the medical evidence and explanation supporting the physician's opinion; 4) how consistent the physician's opinion is with the record as a whole; and 5) the physician's specialization.  20 C.F.R. § 404.1527(c).

A treating physician's opinion must be given substantial or considerable weight, unless good cause is shown to the contrary.  *See* 20 C.F.R. § 404.1527(c)(2) (giving controlling weight to the treating physician's opinion unless it is inconsistent with other substantial evidence); *see also Winschel*, 631 F.3d at 1179.  There is good cause to assign a treating physician's opinion less than substantial or considerable weight, where: 1) the treating physician's opinion is not bolstered by the evidence; 2) the evidence supports a contrary finding; or 3) the treating physician's opinion is conclusory or inconsistent with the physician's own medical records.  *Winschel*, 631 F.3d at 1179.

The ALJ must state the weight assigned to each medical opinion, and articulate the reasons supporting the weight assigned to each opinion. *Winschel*, 631 F.3d at 1179. The failure to state the weight with particularity or articulate the reasons in support of the weight prohibits the Court from determining whether the ultimate decision is rational and supported by substantial evidence. *Id*.

### 1. Dr. Tsai

Claimant argues that the ALJ failed to sufficiently explain why he did not give significant weight to Dr. Tsai's opinions concerning Claimant's need to move around at will and her lack of attention and concentration. Doc. 19 at 29-30. Thus, Claimant implicitly argues that the ALJ failed to apply the correct legal standards in considering Dr. Tsai's opinions and, thus, contends that the ALJ's decision is not supported by substantial evidence. *See id*. at 30.

The Commissioner does not address Claimant's argument concerning the ALJ's decision to assign little weight to Dr. Tsai's opinion concerning Claimant's need to move around at will. *See id*. at 35-36. The Commissioner, instead, focuses on Claimant's second argument, arguing that Claimant misconstrues Dr. Tsai's opinion, because Dr. Tsai twice opined that Claimant's pain would not limit her attention and concentration. *Id*. Further, the Commissioner argues that to the extent Dr. Tsai's opinion is inconsistent, Claimant has failed to explain why the ALJ should have ignored Dr. Tsai's opinions that Claimant's pain would not limit her attention and concentration. *Id*. at 36.

Claimant treated with Dr. Tsai, a rheumatologist, on two occasions between July 2014 and December 2014. R. 457-60.

Dr. Tsai completed a pain questionnaire in March 2015, in which he opined that Claimant suffers from cervical spondylosis, myofascial pain, polyarthritis, and chronic pain. R. 467. Dr.

Tsai opined that Claimant's pain is "slight," which the questionnaire defined as "constitute[ing] interference with tasks requiring sustained attention and concentration." *Id*. Dr. Tsai, however, specifically opined that Claimant's pain would not cause her to have "deficiencies of attention and concentration . . . that would result in a failure to complete tasks in a timely manner[.]" *Id*.

Dr. Tsai completed a separate questionnaire the same month. R. 468. Dr. Tsai opined that Claimant could perform "light work" as defined in the Dictionary of Occupational Titles, but would need to get up and move about frequently on an "as needed" basis. *Id*. Further, Dr. Tsai opined that the "nature and severity" of Claimant's symptoms would not affect her "ability to perform work requiring prolonged concentration or close attention to detail[.]" *Id*.

The ALJ discussed Dr. Tsai's opinions, noting, in relevant part, that "[n]o mental limitations were opined because of the nature and severity of the [C]laimant's symptoms." R. 30. The ALJ went on to assign Dr. Tsai's opinions "some weight," stating:

> The undersigned has given some weight to the opinions of Dr. Tsai to the extent that he opined she was not limited from performing light and sedentary work; however, the undersigned does not find the opinion as to the claimant moving around as needed to be persuasive. Dr. Tsai did not support the opinion with any narrative and there are no findings from Dr. Tsai's treatment notes to explain the reason for this restriction. However, the undersigned notes that a sit/stand option has been included for the claimant with the ability to change positions consistent with her testimony as to her ability to sit and stand at one time[.]

*Id*. Thus, the ALJ noted that Dr. Tsai, contrary to Claimant's argument, opined that Claimant's impairments caused no mental limitations, which the ALJ seemingly agreed with because he did not discuss those particular opinions when weighing Dr. Tsai's opinions. *Id*.

The ALJ properly considered and weighed Dr. Tsai's opinions. First, the ALJ explained that he assigned little weight to Dr. Tsai's opinion concerning Claimant's need to move around at will, because Dr. Tsai "did not support the opinion with any narrative and there are not findings from Dr. Tsai's treatment notes to explain the reason for this restriction." R. 30. These are two

good cause reasons for assigning Dr. Tsai's opinion little weight, and these reasons are supported by substantial evidence, R. 457-60, a fact which Claimant does not contest, *see* Doc. 19 at 29-30. Further, to the extent the ALJ erred, the error is harmless, because the ALJ, despite having assigned that aspect of Dr. Tsai's opinion little weight, included a sit/stand option in his RFC determination based on Claimant's testimony.  R. 28, 30.  The undersigned finds this limitation sufficiently accounts for Dr. Tsai's opinion concerning Claimant's need to move around at will.

Second, the ALJ correctly noted that Dr. Tsai did not opine that Claimant's pain caused mental limitations.  Dr. Tsai opined that Claimant's pain in "slight," which the questionnaire defined as "constitute[ing] interference with tasks requiring sustained attention and concentration." R. 467.  Claimant points to this opinion as evidence that Dr. Tsai opined that Claimant's pain limited her attention and concentration.  Doc. 19 at 30.  This interpretation, however, fails to consider the purpose of the question, which sought an opinion concerning the nature of Claimant's pain, and not its effect.  R. 467.  Further, this interpretation runs counter to Dr. Tsai's responses to two questions which expressly asked him whether Claimant's pain would limit her attention and concertation.  R. 467-68.  Dr. Tsai responded in the negative to both questions.  *Id.*  The ALJ reasonably interpreted Dr. Tsai's responses to these two questions as evidence that Dr. Tsai, in fact, opined that Claimant's pain would not limit her attention and concentration.  The ALJ apparently gave these opinions significant weight, as he did not discuss them when explaining why he only gave some weight to Dr. Tsai's opinions.  *See* R. 30.  Thus, the undersigned finds that the ALJ considered Dr. Tsai's opinions concerning the effect of Claimant's pain on Claimant's ability to pay attention and concentrate.

### 2.  **Nurse Palmisano**

Claimant argues that the ALJ failed to sufficiently explain why he assigned Nurse Palmisano's opinions little weight.  Doc. 19 at 30-31.  Thus, Claimant implicitly argues that the ALJ failed to apply the correct legal standards in considering Nurse Palmisano's opinions and, thus, contends that the ALJ's decision is not supported by substantial evidence.  *See id*. at 31.

The Commissioner argues that the ALJ was not required to give Nurse Palmisano's opinions any special deference, because she is not an "acceptable medical source" under the Social Security regulations.  *Id*. at 36-37.  Further, the Commissioner argues that the ALJ provided sufficient reasons, which are supported by substantial evidence, to assign Nurse Palmisano's opinions little weight.  *Id*. at 37.

Claimant treated with Nurse Palmisano on several occasions between May 2014 and December 2014.  R. 445-48, 464.  Nurse Palmisano completed several questionnaires in September 2014.  R. 440-44.  First, Nurse Palmisano opined that Claimant can occasionally lift up to 20 pounds, can sit a total of 3 hours in an 8-hour workday, can stand/walk a total of 3 hours in an 8-hour workday, will need the ability move around at will throughout the workday, has a limited ability to push and pull with her upper extremities, and can occasionally climb, balance, stoop, kneel, crouch, crawl and reach above her shoulders.  R. 440-41.  Second, Nurse Palmisano opined that Claimant suffers from pain and fatigue, which impact her ability to pay attention and concentrate and would prevent her from performing sedentary work.  R. 442-44.

The ALJ considered Nurse Palmisano treatment records and her opinions.  R. 30.  The ALJ assigned Nurse Palmisano opinions "little weight," explaining:

> The undersigned has considered the opined limitations and [has] ultimately given little weight to these restrictive opinions based on the short treating relationship between the claimant and [Nurse Palmisano,] as well as the lack of support for the statements and the lack of supportive objective findings in the treatment records

> (Exhibits 10F and 12F).  The treatment received was routine and conservative, and it lasted in total no more than five months.  Further, the opinions are not consistent with other medical opinions in the record.

*Id*.  Thus, the ALJ assigned little weight to Nurse Palmisano's opinions because she treated Claimant for a short period of time, the treatment was conservative in nature, she provided no explanation to support the stated limitations, and the limitations were inconsistent with other medical opinions.  *Id*.

The ALJ, contrary to Claimant's argument, was not required to give Nurse Palmisano's opinions any special deference, because she was not an "acceptable medical source" under the Social Security regulations in effect at the time of ALJ's decision.  20 C.F.R. §§ 404.1502 (2016), 404.1513(a), (d)(1) (2016).  Thus, the ALJ was not required to provide good cause reasons for assigning Nurse Palmisano's opinions little weight.  *See* 20 C.F.R. § 404.1527(a)(2) (2016); *see also Stultz v. Comm'r of Soc. Sec.*, 628 F. App'x 665, 668 (11th Cir. 2015) (nurse practitioner's opinion was not entitled to "substantial weight" because she was not considered an acceptable medical source).  The ALJ, nevertheless, articulated several reasons in support of his determination to assign Nurse Palmisano's opinions little weight, including, but not limited to, the short period of treatment, the conservative nature of the treatment, and the fact that Nurse Palmisano's opinions were inconsistent with other medical opinions.  R. 30.  These are relevant factors in determining the weight to assign a medical opinion.  20 C.F.R. § 404.1527(c).  Further, these reasons are supported by substantial evidence, such as Dr. Tsai's opinion that Claimant could perform light work (R. 468).  *See, e.g.*, R. 445-48, 464, 467-68.  Therefore, the undersigned finds that the ALJ's decision to assign Nurse Palmisano's opinions little weight is supported by substantial evidence.

### 3.  Drs. Lavoie & Corak

Claimant argues that the ALJ failed to weigh Drs. Lavoie's and Corak's opinions and, thus, contends that it is unclear how the ALJ accounted for Drs. Lavoie's and Corak's opinions in his RFC determination.  Doc. 19 at 31-34.  Thus, Claimant implicitly argues that the ALJ failed to apply the correct legal standards in considering Drs. Lavoie's and Corak's opinions and, thus, contends that the ALJ's decision is not supported by substantial evidence.  *See id*.

The Commissioner argues that Drs. Lavoie and Corak did not offer any medical opinions, and, thus, there was nothing for the ALJ to weigh.  *Id*. at 37-39.  Further, the Commissioner argues that even if Drs. Lavoie's and Corak's treatment records contained medical opinions, Claimant has failed to demonstrate that Drs. Lavoie's and Corak's treatment records contain findings or opinions that are inconsistent with the ALJ's RFC determination.  *Id*. at 39.

Claimant began treating with Dr. Lavoie, an orthopedic surgeon, in late 2012.  R. 355.  Claimant complained of neck and back pain.  *Id*.  Dr. Lavoie diagnosed Claimant with various impairments of the cervical spine, and performed surgery on Claimant's cervical spine in October 2012.  R. 338-41.  Dr. Lavoie restricted Claimant to lifting no more than 15 pounds following the surgery, R. 368, but lifted that restriction in December 2012, R. 370.  Claimant continued to recover from the surgery, and her physical examinations following the surgery were largely unremarkable.  R. 353, 369, 372.

Dr. Lavoie referred Claimant to Dr. Corak, a neurologist, in December 2013, for a neurological consultation to evaluate Claimant's complaints of decreased range of motion in her neck, intermittent numbness in all four extremities, numbness in her cheeks, dropping things, and loss of taste.  R. 407.  Dr. Corak's physical examination was largely unremarkable, and, given the nature of Claimant's symptoms, Dr. Corak stated that it was difficult to explain many of Claimant's

symptoms.  R. 408.  Claimant appeared for a follow-up consultation with Dr. Corak later that same month, during which Dr. Corak again stated that it was difficult to explain the intermittent nature of Claimant's symptoms.  R. 403.  Dr. Corak never opined that Claimant's impairments caused any functional limitations.  *See* R. 403, 407-08.

Claimant returned to Dr. Lavoie in April 2014, complaining of worsening back pain.  R. 419.  Dr. Lavoie's physical examinations elicited some back pain, but the examinations were otherwise largely unremarkable.  R. 417, 420-22.  Dr. Lavoie diagnosed Claimant with various impairments of the lumber spine, R. 422-23, but never opined that Claimant's impairments caused any permanent functional limitations.  *See* R. 352-73, 416-23.

The ALJ discussed Drs. Lavoie's and Corak's treatment records, R. 29-30, but did not assign any weight to any aspect of their treatment records, *See* R. 27-33.

Claimant does not point to any specific opinions from Drs. Lavoie or Corak but, instead, discusses certain aspects of their treatment records.  Doc. 19 at 31-34.  Thus, it appears that Claimant argues that the ALJ should have weighed Drs. Lavoie's and Corak's treatment records, as they contain medical opinions that must be weighed.  *See id.*  The undersigned is not persuaded.  "A medical provider's treatment notes may constitute medical opinions if the content reflects judgment about the nature and severity of the claimant's impairments."  *Lara v. Comm'r of Soc. Sec.*, 705 F. App'x 804, 811 (11th Cir. 2017) (citing *Winschel*, 631 F.3d at 1179).  The treatment records at issue document Claimant's subjective statements, largely unremarkable examination findings, diagnoses, and treatment.  *See* R. 352-73, 403, 407-08, 416-23.  The treatment records, however, do not reflect any statements or judgments about the nature and severity of Claimant's impairments, nor do they contain any opinions (aside from the lifting restriction that was removed a month after it was imposed (R. 368-70)) about Claimant's functional limitations.  *See id.*  Thus,

14

the undersigned finds that the ALJ was not required to weigh Drs. Lavoie's and Corak's treatment records.

Further, assuming Drs. Lavoie's and Corak's treatment records contain medical opinions that should have been weighed, the ALJ's failure to weigh those medical opinions is harmless error. The ALJ considered Drs. Lavoie's and Corak's treatment records, as well as the other medical evidence of record, and found that Claimant had the RFC to perform less than the full range of light work. R. 28-33. Claimant has pointed to nothing in Drs. Lavoie's and Corak's treatment records, such as observations concerning Claimant's symptoms or opinions concerning Claimant's functional limitations, that demonstrate that Claimant's impairments caused functional limitations greater than those contained in the ALJ's RFC determination. *See Wright v. Barnhart*, 153 F. App'x 678, 684 (11th Cir. 2005) (failure to weigh a medical opinion is harmless error if the opinion does not directly contradict the ALJ's RFC determination); *see also Caldwell v. Barnhart*, 261 F. App'x 188, 190 (11th Cir. 2008). Thus, to the extent the ALJ erred by not weighing Drs. Lavoie's and Corak's treatment records, the undersigned finds that the error is harmless.

Therefore, in light of the foregoing, it is **RECOMMENDED** that the Court reject Claimant's second assignment of error.

### C. Credibility

Claimant argues that the ALJ's credibility determination is merely a boilerplate statement which does not provide sufficient reasoning to support the ALJ's determination that Claimant's testimony was "not entirely consistent with the medical evidence and other evidence in the record[.]" Doc. 19 at 40-41.

The Commissioner argues that the ALJ provided specific reasons in support of his credibility determination, and that his credibility determination is supported by substantial evidence. *Id*. at 41-44.

A claimant may establish "disability through his own testimony of pain or other subjective symptoms." *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005). A claimant seeking to establish disability through his or her own testimony must show:

> (1) evidence of an underlying medical condition; and (2) either (a) objective medical evidence confirming the severity of the alleged pain; or (b) that the objectively determined medical condition can reasonably be expected to give rise to the claimed pain.

*Wilson v. Barnhart*, 284 F.3d 1219, 1225 (11th Cir. 2002). If the ALJ determines that the claimant has a medically determinable impairment that could reasonably produce the claimant's alleged pain or other symptoms, the ALJ must then evaluate the extent to which the intensity and persistence of those symptoms limit the claimant's ability to work. 20 C.F.R. § 404.1529(c)(1). In doing so, the ALJ considers a variety of evidence, including, but not limited to, the claimant's history, the medical signs and laboratory findings, the claimant's statements, medical source opinions, and other evidence of how the pain affects the claimant's daily activities and ability to work. *Id*. at § 404.1529(c)(1)-(3). "If the ALJ decides not to credit a claimant's testimony as to her pain, he must articulate explicit and adequate reasons for doing so." *Foote*, 67 F.3d at 1561-62; *see* SSR 16-3p, 2016 WL 1237954 ("The determination or decision must contain specific reasons for the weight given to the individual's symptoms, be consistent with and supported by the evidence, and be clearly articulated so the individual and any subsequent reviewer can assess how the adjudicator evaluated the individual's symptoms."). The Court will not disturb a clearly articulated credibility finding that is supported by substantial evidence. *Foote*, 67 F.3d at 1562.

The ALJ summarized Claimant's testimony as follows:

16

> [T]he claimant testified that she experienced pins and needles sensation "all the time, could not focus on 'anything,' and had problems doing 'everything.'" The claimant testified that pain in her lower back and neck that travelled to her legs, feet, and hands kept her from working. The claimant alleged that the pain and numbness had only gotten progressively . . . worse since her cervical surgery. The claimant reported that she could not sleep due to pain and numbness. The claimant testified to repeated infections "due to her immune system." The claimant reported being short tempered as a result of pain. The claimant estimated that she could sit for thirty minutes before her feet became numb, could stand for 40 minutes, and walk for 20 minutes at one time. The claimant testified that she might be able to lift a gallon of milk but could carry grocery bags over the course of several trips.

R. 32. The ALJ found that "the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision." *Id*. The ALJ provided further explanation in support of his credibility determination, explaining:

> The claimant has alleged physical limitations, mental limitations, and medication side effects far in excess of the objective medical evidence and in contrast to some of the activities of daily that she has reported to her providers.
>
> To begin, the claimant has alleged significant disabling pain from her neck and back that she has described as travelling to her extremities. However, the claimant has undergone extensive-work-ups by orthopedics, neurology, and rheumatology without any doctor specifically finding an etiology for her complaints. Fibromyalgia/polyarthritis has been the primary opined cause for her complaints; however, the file does not actually contain imaging confirming body wide osteoarthritis or joint degeneration and there have not been any noted positive trigger points or specific findings as to the extent of any weakness she reportedly exhibits. The claimant takes medications for her complaints; however, she alleges that these medications do not provide adequate relief of symptoms. In addition, she has not sought alternative treatment or providers. Moreover, the claimant's records do not demonstrate any work with physical therapy or water therapy, which is often seen in fibromyalgia treatment recommendations.
>
> As to claimant's alleged mental impairments, her records show no significant manifestation of symptoms with minimal and sporadic treatment for her allegedly disabling symptoms (Exhibits 4F, 5F, 7F, 21F, and 23F).
>
> The claimant has not been hospitalized for symptoms, and she has reported to providers that she maintained the ability to walk for exercise and attended the gym

17

twice a week, as noted above herein.  There is also some indication from the file that the claimant was travelling back and forth to Atlanta during the period at issue, which belies the significant limitations she has alleged.

R. 33.  Thus, the ALJ found that Claimant's allegations concerning the intensity, persistence, and limiting effects of her symptoms were "not entirely consistent" with the medical evidence, the absence of alternative treatment commonly prescribed for some of Claimant's impairments, and the nature and scope of her daily activities.  *Id*.

The foregoing excerpts reveal that the ALJ's credibility determination was not limited to the boilerplate language highlighted by Claimant.  Thus, the undersigned finds Claimant's argument challenging the sufficiency of the ALJ's credibility determination unpersuasive.

The ALJ, contrary to Claimant's argument, provided several specific reasons in support of his credibility determination, R. 33, which Claimant has not challenged on appeal, *see* Doc. 19 at 40-41.  The undersigned, having reviewed the record, finds that the reasons articulated by the ALJ in support of his credibility determination support that determination, and are supported by substantial evidence.  Thus, the undersigned finds that the ALJ articulated good cause in finding Claimant's testimony "not entirely consistent" with the evidence of record, and that his reasons are supported by substantial evidence.  *See Foote*, 67 F.3d at 156162 (reviewing court will not disturb credibility finding with sufficient evidentiary support).  Therefore, the undersigned **RECOMMENDS** that the Court reject Claimant's third assignment of error.

## V.     Conclusion

Accordingly, it is **RECOMMENDED** that the Court:

1.  **AFFIRM** the Commissioner's final decision; and

2.  Direct the Clerk to enter judgment in favor of the Commissioner and against the Claimant, and close the case.

## <u>NOTICE TO PARTIES</u>

A party has fourteen days from this date to file written objections to the Report and Recommendation's factual findings and legal conclusions. A party's failure to file written objections waives that party's right to challenge on appeal any unobjected-to factual finding or legal conclusion the district judge adopts from the Report and Recommendation. *See* 11th Cir. R. 3-1.

Recommended in Orlando, Florida on April 17, 2018.

DANIEL C. IRICK
UNITES STATES MAGISTRATE JUDGE

Copies furnished to:

Presiding District Judge
Counsel of Record
Unrepresented Party
Courtroom Deputy